UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLOTTE DRUEDING,<br><br>     Plaintiff,<br><br> v.<br><br>THE TRAVELERS HOME AND MARINE<br>INSURANCE COMPANY,<br><br>     Defendant. | CASE NO. 22-CV-00155-LK<br><br>ORDER GRANTING IN PART<br>AND DENYING IN PART<br>MOTION TO COMPEL AND<br>REQUEST FOR SANCTIONS,<br>AWARDING EXPENSES, AND<br>EXTENDING DEADLINES |

This matter comes before the Court on Defendant Travelers Home and Marine Insurance Company's Motion to Compel and Request for Sanctions, Dkt. No. 29, and Motion for Limited Extension of Discovery Cutoff, Dkt. No. 32. Although the Court agrees that Travelers is entitled to the discovery at issue and orders Plaintiff Charlotte Drueding to submit her electronic devices for a forensic examination, dismissal is too drastic a sanction at this juncture. The Court instead awards Travelers the expenses it incurred as a result of Ms. Drueding's failure to comply with the discovery requests at issue—including the costs and attorney fees associated with the motion to compel and the cost of the forensic examination. The discovery deadline is extended 30 days from

the date of this Order so that Travelers may depose Ms. Drueding and obtain and review the communications she improperly withheld. Finally, the Court cautions Ms. Drueding that future discovery violations or violations of the Court's orders may result in sanctions more severe than these, up to and including dismissal. Dishonesty, evasiveness, and deceit will not be tolerated.[1]

## I.      INTRODUCTION

This case involves a valuation dispute under a homeowners insurance policy. As for the immediate issue, Travelers seeks an order compelling Ms. Drueding to produce certain communications and proposes a forensic examination of her electronic devices. The parties also dispute the propriety of dismissal as a sanction for Ms. Drueding's discovery violations and disagree over Travelers' entitlement to an extension of the discovery deadline. Before the Court delves into the substance of the parties' arguments, a few background facts are necessary to contextualize the dispute.

<u>The Condo Damage and Lawsuit</u>

Travelers issued a Homeowners Condo Policy (the "Policy") to Ms. Drueding in January 2019. *See* Dkt. No. 31-1 at 4–48. Days before the Policy period was set to expire, Ms. Drueding dropped an ashtray on the bathroom floor and fractured a tile. Dkt. No. 31-2 at 2. She then accidentally split the "heating floor wiring" when she attempted to clean up the fractured tile. *Id.*; *see also* Dkt. No. 31-3 at 2 (photograph of bathroom depicting fractured tile). Ms. Drueding attempted to repair the tile herself and, in the process, "noticed water leaking behind the shower head" and that "the water wasn't working in the bathroom shower." Dkt. No. 31-5 at 4. Travelers' accepted coverage for the tile and water damage. Dkt. No. 31-2 at 2; Dkt. No. 31-6 at 2. Its claims inspector determined that the tile would "need to be torn up and replaced," and that "[t]he toilet,

---

[1] Travelers requested oral argument on its motion to compel. Dkt. No. 29 at 1. In light of the Court's ruling, however, oral argument is unnecessary.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AND REQUEST FOR SANCTIONS, AWARDING EXPENSES, AND EXTENDING DEADLINES - 2

1   vanity, countertop, and backsplash w[ould] all need to be detached and reset." Dkt. No. 31-2 at 2.

2   As for the water leak, Travelers' inspector located damage in the bedroom "where the water from

3   the shower faucet was leaking causing water damage to the drywall . . . and to the carpet and pad."

4   Dkt. No. 31-6 at 2. They concluded that the carpet would "need to be lifted to [be] dried and the

5   wet pad removed." *Id.* Because the baseboard did not appear to be damaged, it needed only to be

6   detached, reset, and painted. *Id.* The drywall likewise needed to be replaced, sealed, and painted.

7   *Id.* And last, the walls and ceiling needed to be painted once the repairs were complete. *Id.*

8          Travelers thereafter issued three payments to Ms. Drueding: $5,608.57 for the tile damage,

9   $3,568.15 for the water damage, and $1,177.11 in recoverable depreciation upon completion of

10  the repairs (a total of $10,353.83). Dkt. No. 29 at 3; Dkt. No. 31-7 at 2; Dkt. No. 31-8 at 2. In

11  August 2020, however, Ms. Drueding demanded that Travelers fork over $132,498.46 based on

12  an invoice from All Around Interiors—a sole proprietorship owned and operated by Jon Karwoski.

13  Dkt. No. 29 at 4; Dkt. No. 30-1 at 7; *see* Dkt. No. 31-9 at 2–5 (invoice).[2] Travelers refused to pay

14  this amount and proposed several other contractors "whose estimates it would accept." Dkt. No.

15  29 at 5. Although Ms. Drueding acknowledged that four contractors had visited her condo to

16  survey the damage, she protested that "not one of them even provided [her] with a bid." Dkt. No.

17  31-11 at 3. She also insisted that there was "no need for a comp bid" because she had "already

18  chosen a contractor to do [the] job." *Id.* According to Ms. Drueding, this contractor did "high

19  quality work" and was "the only one [she] found who ha[d] the expertise relevant to 'repair and

20  replace' [her] bathroom." *Id.* She had "already signed a contract with him and paid him money."

21  *Id.* Ms. Drueding concluded her email by asking Travelers to "[p]lease send [her] a check so that

22  [she] c[ould] get this job done and get [her] home back together[.]" *Id.*

23

24  [2] The invoice from All Around Interiors appears to itemize costs and hours for work already done on Ms. Drueding's
    condo as well as estimate the costs of future work. *See* Dkt. No. 31-9 at 2–5.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AND REQUEST FOR
SANCTIONS, AWARDING EXPENSES, AND EXTENDING DEADLINES - 3

Once again, Travelers rejected this request and reiterated that the amount Ms. Drueding sought was "not consistent with the market costs for the repairs." Dkt. No. 31-11 at 2. It offered to dispatch an independent construction company to provide a competitive bid that might account for any increase in repair costs. *Id.* Travelers eventually obtained a bid from Koss Construction, Inc., which totaled the replacement cost value at $10,319.99 for the bathroom damage and $5,066.63 for the bedroom damage. Dkt. No. 31-12 at 5–7; Dkt. No. 31-13 at 5–7. Because this estimate exceeded Travelers' previous payments to Ms. Drueding, it issued two supplemental payments totaling $5,474.02. Dkt. No. 31-14 at 2; Dkt. No. 31-15 at 2. Ms. Drueding sued Travelers in King County Superior Court for breach of contract, insurance bad faith, negligence and violation of Washington's Consumer Protection Act. Dkt. No. 1-2 at 4–5.

<u>Travelers' Discovery Woes Begin</u>

In April 2022, Travelers served its First Set of Interrogatories and Requests for Production. Dkt. No. 30-2 at 2–15. Relevant here are Interrogatory No. 8 and Request for Production No. 3. The former asked Ms. Drueding to "[i]dentify any and all Communications between [her] and Jon Karwoski or any agents of All Around Interiors including, but not limited to, Jon Karwoski[.]" *Id.* at 8. It further requested that Ms. Drueding "identify any and all Documents embodying such communications, including but not limited to: letters, text messages, e-mails, or messages transmitted over Facebook, Instagram, WhatsApp, Snapchat, or other social media platform or messaging application." *Id.* Request for Production No. 3 demanded "all documents identified in response to Interrogatory No. 8." *Id.* at 11. Although Ms. Drueding's responses were due in May, she did not produce them until late July. *See* Dkt. No. 29 at 6–7.[3] And once she did, Ms. Drueding

---

[3] This delay was due in part to the withdrawal of Ms. Drueding's first attorney. Dkt. No. 29 at 7; *see* Dkt. No. 15. Travelers agreed to a 30-day extension of the response deadline shortly after another attorney took over as counsel for Ms. Drueding. Dkt. No. 30-4 at 2–6; Dkt. No. 30-5 at 5–9. When Ms. Drueding missed the extended deadline, Travelers' counsel reached out to that attorney to obtain the responses. Dkt. No. 30-5 at 2.

1    denied having any communication with Mr. Karwoski beyond seeing him at her work: "I spoke to

2    Jon Karwoski at the bar where I work. I have no documents responsive to this interrogatory." Dkt.

3    No. 30-7 at 10. She likewise responded "[n]one" to Request for Production No. 3. *Id.* at 15.

4    However, Ms. Drueding's answer to Interrogatory No. 12—which asked her to identify any person

5    who performed repair work on the condo damage—told a different story. *Id.* at 12. There she

6    admitted to at least one other interaction with Mr. Karwoski: "Jon Karwoski had a plumber come

7    out and repair the shower head. My understanding is that it was a bad valve." *Id.*

8         Meanwhile, Travelers had deposed Mr. Karwoski in April 2022. Dkt. No. 30-1 at 6. He

9    testified that he knew Ms. Drueding from high school and ran into her at a Burien bar in November

10   2019. *Id.* at 9–10; *see also id.* at 9 ("I know her through—I got involved in this because somebody

11   I knew at a bar. I knew her through a bar. She's a bartender, been 32 years in Burien."). According

12   to Mr. Karwoski, the two did not discuss Ms. Drueding's issues with the condo repairs during their

13   first encounter; that topic did not arise until Ms. Drueding "got ahold of [him] through the bar"

14   around the end of January or beginning of February 2020—"right before COVID came on the

15   news[.]" *Id.* at 11 (Q: "And did she contact you via phone, e-mail, or how did she get in touch with

16   you?" A: "Just at the bar."). When Travelers' counsel received Ms. Drueding's interrogatory and

17   production responses months later, she identified the same address given by Mr. Karwoski as her

18   current address. *Compare id.* at 6 *with* Dkt. No. 30-7 at 8.[4]

19        Counsel for Travelers requested supplemental responses from Ms. Drueding on July 29,

20   2022. Among other deficiencies, he asserted that Ms. Drueding failed to identify several pieces of

21   information related to her allegedly lone communication with Mr. Karwoski at the bar, including

22   the date, location, and names of each person present during the conversation. Dkt. No. 30-8 at 3.

23

24   ───────────────
[4] Ms. Drueding sold her condo in December 2021. Dkt. No. 29 at 7.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AND REQUEST FOR
SANCTIONS, AWARDING EXPENSES, AND EXTENDING DEADLINES - 5

Counsel also noted a discrepancy in Ms. Drueding's responses: "In addition, Plaintiff's response to Interrogatory No. 12 demonstrates that she communicated with Jon Karwoski on more than one occasion. Please supplement the response with a *complete* listing of all communications with Jon Karwoski, as well as the information required by the definition of 'communication.'" *Id.* This request for supplemental responses ended with a warning that Travelers would "be forced to proceed with a motion to compel" if Ms. Drueding did not supply the requested information by August 12th. *Id.* at 4.

On August 9th, counsel sent another email reiterating Travelers' demand for all communications between Ms. Drueding and Mr. Karwoski and again threatening to file a motion to compel. *See* Dkt. No. 30-9 at 2–5. This time counsel emphasized Travelers' discovery that Ms. Drueding and Mr. Karwoski live together—a fact "utterly incompatible with her claim to have communicated with him only once at the bar where she works." *Id.* at 2; *see also id.* at 4 ("The notion that Plaintiff could *reside with* Mr. Karwoski without communicating with him more than once in a bar strains credulity."). As counsel noted, Ms. Drueding's responses to the interrogatories "conclusively demonstrate that [her] answers were untruthful and incomplete." *Id.* at 3. This second email instructed Ms. Drueding to "preserve the contents of any devices that might contain discoverable information, including but not limited to cell phones, tablets, laptops, or computers." *Id.* at 4. And finally, counsel closed by indicating Travelers' intent to subpoena Ms. Drueding's and Mr. Karwoski's cell phone records. *Id.*[5]

Travelers followed through on that, too. On August 10th, it served subpoenas for production on Sprint, CenturyLink, and Verizon. *See id.* at 6–36. The ensuing Verizon records reveal that Ms. Drueding and Mr. Karwoski exchanged 19 phone calls between December 2019

---

[5] Travelers agreed to extend the deadline for Ms. Drueding's supplemental responses to August 19, 2022, but her second attorney moved to withdraw on August 18th. Dkt. No. 29 at 8; *see* Dkt. Nos. 20, 22.

and August 2021. Dkt. No. 29 at 8. The records also show that Ms. Drueding exchanged daily phone calls with a number registered to Mr. Karwoski's ex-wife—a number he apparently uses regularly. *Id.* In all, Ms. Drueding spent more than 1,000 minutes on the phone and exchanged at least 476 text messages with the two numbers associated with Mr. Karwoski. *Id.*; *see* Dkt. No. 30-10 at 3–76; Dkt. No. 30-11 at 2–70; Dkt. No. 30-12 at 2–5. Travelers alleges that this is just the tip of the iceberg. Verizon maintains text history for only 365 days, meaning the 476 texts only account for August 2021 to the date of the subpoena in August 2022. Dkt. No. 29 at 8–9. And Verizon does not store text message content. *Id.* at 9.

The parties held a telephonic discovery conference on September 27, 2022. *Id.* at 9. In a post-call email memorializing the discussion, Travelers' counsel reminded Ms. Drueding's newest attorney of the outstanding supplemental responses. Dkt. No. 34 at 5. He clarified that Travelers' request was limited to all communications with Mr. Karwoski between November 1, 2019 and the present. *Id.* The parties further agreed to extend the discovery motions deadline from September 28th to October 5th so that Ms. Drueding could use the extra week "as an opportunity to supplement her discovery responses[.]" *Id.* Travelers' counsel emphasized that, given Ms. Drueding and Mr. Karwoski's cohabitation, he expected "at least some document production of relative significance[.]" *Id.* Counsel warned that if Ms. Drueding failed to produce the documents by October 3rd or the document production was "insignificant," Travelers would "have no choice but to file a motion to compel and seek sanctions on October 5, 2022." *Id.* Last, the parties confirmed that Ms. Drueding's deposition would take place on October 13th. *Id.* The Court subsequently extended the discovery motions deadline to October 21st. Dkt. No. 28.

<u>Ms. Drueding's Supplemental Production is Deficient</u>

On October 4th, Ms. Drueding produced 96 pages of documents. Dkt. No. 34 at 18. Included in this disclosure were a single text message and several emails evincing a romantic

relationship between Ms. Drueding and Mr. Karwoski. *See* Dkt. No. 30-19–30-25. On October 7th, Travelers' counsel thanked Ms. Drueding's attorney for the production but indicated that he was "inundated with other matters" and had been unable to review the documents. Dkt. No. 34 at 17. The parties accordingly agreed to extend the discovery motion deadline to October 21st, Dkt. No. 27, a stipulation the Court granted, Dkt. No. 28. Travelers ended up displeased with the supplemental production. Counsel conveyed his disappointment via email on October 12th by abruptly calling off Ms. Drueding's deposition (scheduled for the following day) and asserting his belief that Ms. Drueding's production "remain[ed] deficient." Dkt. No. 34 at 19. Given Ms. Drueding and Mr. Karwoski's romantic relationship, Travelers refused to believe "that the universe of written communications between the two of them could be . . . limited to the documents provided." *Id.* Counsel indicated that Travelers now had "no choice but to proceed with a motion to compel." *Id.* Although it was Travelers' position that the September 27th conference call satisfied the meet-and-confer requirements, counsel indicated that he was open to further conferral if Ms. Drueding's attorney believed it was necessary. *Id.*

Ms. Drueding's attorney did not press for further conferral. Nor did he offer to search for additional responsive documents. Instead, he suggested moving forward with Ms. Drueding's deposition as scheduled "to determine whether there [was], in fact, any deficiency" in the production: "IF you can establish that, *then* we could try to resolve the omissions (if any)." *Id.* Ms. Drueding's attorney concluded by suggesting that Travelers "appear[ed] to be relying on [its] own speculation that something [was] missing[.]" *Id.* In his view, there was no basis "for a motion to compel something that may not even exist." *Id.* On October 19th and 20th, Travelers filed its motion to compel and motion for a 30-day extension of the discovery deadline. Dkt. Nos. 29, 32. Discovery closed on October 28th. Dkt. No. 13.

## II.     DISCUSSION

The Court first addresses Travelers' motion to compel and explores the propriety of sanctions against Ms. Drueding. It then explains why an extension of the discovery deadline is appropriate—but only for Travelers.

### A.     Motion to Compel

Travelers seeks an order compelling Ms. Drueding to produce "all written communications with Jon Karwoski." Dkt. No. 29 at 9.[6] Specifically, it proposes that the Court order Ms. Drueding to surrender her electronic devices for a forensic examination because she cannot be trusted to identify and produce the relevant documents. Dkt. No. 29 at 10, 13. "The Court strongly disfavors discovery motions and prefers that the parties resolve discovery issues on their own." *Leyva v. Allstate Fire & Cas. Ins. Co.*, No. 2:21-CV-987-RSM-DWC, 2022 WL 6747990, at *2 (W.D. Wash. Oct. 11, 2022). When such good-faith efforts fail, however, a party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1); *see also* Fed. R. Civ. P. 37(a)(3)(B) (a party may move for an order compelling production or inspection if the opposing party fails to answer an interrogatory or fails to produce documents).

### 1.     The Meet-and-Confer Requirement is Satisfied

A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). The local analogue to Rule 37 further specifies that a good-faith effort to confer with the opposing party "requires a face-to-face meeting or a telephone conference." LCR 37(a)(1). If a movant fails to include a certification, the Court "may deny the motion without addressing the merits of the dispute." *Id.* Travelers did

---

[6] Consistent with the parties' email correspondence, the Court proceeds on the presumption that Travelers' request is limited to communications between November 1, 2019 and the present. *See* Dkt. No. 34 at 5.

not include such a certification in its motion; however, counsel's attached affidavit does include the requisite certification. *See* Dkt. No. 30 at 3–4. The Court finds this sufficient. It also concludes that the September 27th telephonic discovery conference satisfies Travelers' meet-and-confer obligation. During that call, the parties discussed the substance and scope of Travelers' request for supplemental production. *See* Dkt. No. 34 at 4–5. Travelers repeatedly clarified which communications it sought, the basis for its request, and why it believed the documents existed. It likewise repeatedly conveyed Travelers' intent to file a motion to compel if Ms. Drueding failed to produce the requested communications or her production was again deficient. *See* Dkt. No. 30-8 at 4; Dkt. No. 30-9 at 2, 5; Dkt. No. 34 at 5, 19; Dkt. No. 43-2 at 3. The prerequisites set forth in Federal Rule of Civil Procedure 37(a)(1) and Local Civil Rule 37(a)(1) are thus satisfied here. *See Ewalan v. St. Germain*, No. C21-5519-BJR-MLP, 2022 WL 2789012, at *2 (W.D. Wash. July 15, 2022) (both rules "require a conversation specific to the anticipated subject of any motion to compel").

2.   Travelers Is Entitled to the Requested Production

Each party is entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," and the Court should consider the request in light of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Materials need not be admissible in evidence to be discoverable. *Id.* District courts ultimately retain broad discretion to permit or deny discovery, *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002), and this broad discretion encompasses relevancy determinations, *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

Travelers contends that the production it seeks is relevant because Ms. Drueding "relies exclusively on Mr. Karwoski's estimate" in support of her claims. Dkt. No. 29 at 10. The Court agrees. Ms. Drueding's claims turn on the reasonableness of Travelers' payment under the Policy, and she relies on Mr. Karwoski's $132,498.46 estimate from All Around Interiors as the benchmark appraisal for the cost of proper repairs. *See, e.g.*, Dkt. No. 1-2 at 3 (alleging that Travelers' $15,000 payment "ignored the need to replace the custom tile work in the bathroom" and "did not allow even the purchase of proper, like-kind-and-quality replacement materials, let alone a proper, professional installation."). Ms. Drueding and Mr. Karwoski repeatedly minimized and concealed the extent of their relationship. By their account, they had little to no contact outside of a chance meeting or two at Ms. Drueding's work. As Travelers eventually discovered, however, they are not only romantically involved but also living together. The unspoken inference here is that Ms. Drueding and Mr. Karwoski may have been colluding to bill Travelers with an egregiously inflated estimate comprised of (1) gratuitous repairs and/or (2) work that was never done and supplies that were never purchased. Put differently, Ms. Drueding would receive a remodel and Mr. Karwoski a windfall. It goes without saying that communications evincing such plans would undermine the reasonableness of the All Around Interiors estimate.

And even setting aside nefarious and conspiratorial motives, the communications between Ms. Drueding and Mr. Karwoski are relevant to a conceivably wide array of issues. To name just two examples, the messages might be used to refute Ms. Drueding's version of events or her representations to Travelers during the claims process. *See Choi v. City of Lakewood*, No. 21-5119-RJB, 2022 WL 670898, at *2 (W.D. Wash. Mar. 7, 2022) ("The court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become

1    an issue in the litigation." (cleaned up)).[7]

2           Because the requested information is relevant, Ms. Drueding "has the burden to show

3    discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its

4    objections." *Cunningham v. Bank One*, No. C05-2104-RSM, 2006 WL 3361773, at *1 (W.D.

5    Wash. Nov. 20, 2006); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (the federal

6    rules embody "liberal discovery principles" and the resisting party carries a "heavy burden" to

7    show why discovery should be denied). Ms. Drueding fails to carry that burden. Indeed, she does

8    not dispute that the communications at issue are relevant. Ms. Drueding instead suggests that she

9    knows of no additional communications and, even if there are some out there, she does not have

10   them. *See* Dkt. No. 40 at 7 ("What then is the purpose of Travelers' requested order compelling

11   discovery if Ms. Drueding does not have the possession, custody and/or control of documents

12   which may not even exist?"). Ms. Drueding avers that she contacted Verizon on September 27th

13   and "asked it to provide [her] with copies of all of [her] emails and all of [her] text messages."

14   Dkt. No. 41 at 2. She claims that, after receiving the emails and texts, she "provided them to [her]

15   attorney, who in turn produced them to Travelers on October 4, 2022 in the form in which [she]

16   had received them." *Id.* Ms. Drueding swears that she knows of nothing else she can do to provide

17   additional emails or texts to Travelers. *Id.*

18          These arguments are unavailing. To the extent Ms. Drueding contends that she is unable to

19   comply with the production request because she is not in possession or control of the

20

21   ───────────
     [7] The Court acknowledges that texts and emails between romantic partners can contain private—indeed, sometimes
22   embarrassing—communications. It is likewise aware of the breadth of Travelers' request in seeking *all*
     communications between November 2019 and the present day. However, Ms. Drueding had ample opportunity to
23   object to the scope of Travelers' discovery request and did not. *See, e.g.*, Dkt. No. 30-9 at 5 ("Please let us know if
     Plaintiff has any objection to the requested supplementation."). Even now, Ms. Drueding fails to object to the scope
     of Travelers' request and does not otherwise advance an argument related to relevance. The Court thus finds that any
24   objections to Travelers' request have been waived. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468,
     1473 (9th Cir. 1992).

     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AND REQUEST FOR
     SANCTIONS, AWARDING EXPENSES, AND EXTENDING DEADLINES - 12

communications at issue, the Court disagrees. Ms. Drueding does not dispute that she has actual "possession, custody, or control" of her phone and other personal electronic devices. *See* Fed. R. Civ. P. 34(a)(1). Ms. Drueding's suggestion that there are no other communications likewise fails the straight-face test. In Travelers' words, it simply "strains credulity" that Ms. Drueding and Mr. Karwoski's written communications—across all platforms—are limited to the 96 documents produced on October 4th. Dkt. No. 30-9 at 4. Indeed, Ms. Drueding has at least 475 text messages that she has not produced to Travelers. Notably, she states that she "do[es] not know of anything else [she] could do" other than her request to Verizon "to provide additional emails and text messages to Travelers," but she does not indicate that she made any attempt to search her emails or texts for responsive contents. Dkt. No. 41 at 2. As Travelers contends, this suggests that she "deleted the texts" or "knows they exist and deliberately refused to obtain them." Dkt. No. 42 at 3. Either way, Ms. Drueding's actions are impermissible.

Based on its review of the parties' communications and the record in this case, the Court finds that Ms. Drueding has intentionally withheld relevant and discoverable communications from Travelers and, possibly, her own attorneys. She delayed and actively evaded disclosure of documents (whether in email or text message form) responsive to Interrogatory No. 8 and Request for Production No. 3. *See* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."); Fed. R. Civ. P. 26(e)(1)(A) ("A party. . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]"); *Putz v. Golden*, No. C10-0741-JLR, 2012 WL 13019220, at *4 (W.D. Wash. May 22, 2012) ("[A] party responding to a Rule 34 production request is under an affirmative duty to seek that information reasonably available to it[.]" (cleaned up)). Ms. Drueding's repeated misrepresentations and foot-dragging raise serious concerns about her future efforts to comply

with discovery obligations in good faith and lead the Court to conclude that an independent forensic examination of her electronic devices is necessary and appropriate. *See Krishnan v. Cambia Health Sols., Inc.*, No. 2:20-CV-574-RAJ, 2021 WL 3129940, at *5 (W.D. Wash. July 23, 2021) (plaintiff's "delay in producing requested documents and communications" and intentional withholding of relevant and discoverable communications raised "significant concerns" about his compliance with discovery obligations and necessitated forensic examination of his electronic devices); *Lee v. Asplundh Tree Expert Co.*, No. C17-719-MJP, 2017 WL 6731978, at *2 (W.D. Wash. Dec. 29, 2017) (compelling forensic examination of plaintiff's cell phone because she could not "be trusted to produce authentic and unaltered documents"); *Ascar v. U.S. Bank, N.A.*, No. 2:13-CV-07496-DSF-VBK, 2014 WL 12639926, at *1 (C.D. Cal. Sept. 25, 2014) (ordering plaintiff to produce "his phone, any hard drive or other storage media, and any other relevant electronic device he owns or has control over . . . that contains electronically stored information" because his discovery responses and production of documents were "wholly inadequate and non-responsive").

Ms. Drueding nonetheless argues that a forensic examination of her phone is inappropriate because Travelers could have, but did not, request an inspection pursuant to Federal Rule of Civil Procedure 34. Dkt. No. 40 at 5. According to her, unless the Court grants Travelers an extension of the discovery deadline, its request to inspect the phone is untimely and should be denied. *Id.* Ms. Drueding further complains that Travelers never mentioned an inspection of her phone during the parties' September 27th telephonic discovery conference. *Id.* These arguments are meritless. As Travelers points out, its request to inspect Ms. Drueding's electronic devices is not a new, standalone discovery request—it is a consequence of her failure to comply with discovery obligations. Dkt. No. 42 at 6. The substance of Travelers' production request has remained the same since the get-go: it wants all communications between Ms. Drueding and Mr. Karwoski.

Travelers was not required to request an inspection of every source of those communications in order to obtain them in response to its discovery requests. Nor was it required to demand an inspection of Ms. Drueding's phone during the parties' telephonic discovery conference, where it again made clear which documents it was requesting. And last, to the extent Ms. Drueding banks on discovery being closed, the Court is extending the discovery deadline for the reasons set forth below.

The Court therefore grants Travelers' motion to compel. Ms. Drueding shall bear the cost of the forensic examination since it is "a direct consequence of [her] failure to properly disclose communications and apparent withholding of information[.]" *Krishnan*, 2021 WL 3129940, at *5. The Court cautions Ms. Drueding against deletion or alteration of her cell phone contents or email prior to the inspection. *See* Fed. R. Civ. P. 37(e)(2)(C) (a district court may dismiss an action upon finding that the plaintiff "acted with the intent to deprive another party of the information's use in the litigation"); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were *potentially* relevant to the litigation before they were destroyed." (cleaned up)).[8]

3.   Travelers is Entitled to Rule 37 Expenses

Where, as here, the Court grants a motion to compel, it "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney

---

[8] In August 2022, Travelers formally instructed Ms. Drueding "to preserve the contents of any devices that might contain discoverable information, including but not limited to, cell phones, tablets, laptops, or computers." Dkt. No. 30-9 at 4. In addition, Ms. Drueding has an independent responsibility to preserve evidence that arose at the point "[s]he kn[e]w[] or reasonably should [have] know[n] that the evidence [wa]s relevant and when prejudice to an opposing party [wa]s foreseeable if the evidence [wa]s destroyed." *Hausman v. Holland Am. Line-U.S.A.*, No. CV13-0937-BJR, 2016 WL 51273, at *9 (W.D. Wash. Jan. 5, 2016); *see also John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) ("[I]t is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party has notice that the evidence is relevant to litigation or should have known that the evidence may be relevant to future litigation.") (cleaned up); *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 990 (N.D. Cal. 2012) ("[T]here is no question that the duty to preserve relevant evidence may arise even before litigation is formally commenced.").

1  advising that conduct, or both to pay the movant's reasonable expenses incurred in making the

2  motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The only way that the Court will

3  not order such fees is if the movant failed to make a good-faith attempt to obtain the discovery

4  without court action, the opposing party's nondisclosure was substantially justified, or other

5  circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii). In other words, Rule 37

6  "creates a presumption that the losing party will pay the attorney fees which the prevailing party

7  incurred in bringing the motion." *Ryness Co. v. Builder Sales Grp., LLC*, No. C10-1096-JCC, 2011

8  WL 2532691, at *1 (W.D. Wash. June 24, 2011).

9       Ms. Drueding has failed to rebut this presumption by showing that Travelers brought the

10  motion without conferring in good faith, that her failure to produce the communications at issue

11  was substantially justified, or that other circumstances make an award unjust. *See Cherry v.*

12  *Prudential Ins. Co.*, No. C21-27-MJP, 2021 WL 5205614, at *3 (W.D. Wash. Nov. 9, 2021).

13  Nonproduction is substantially justified only when there is a "genuine dispute" as to whether the

14  information at issue is discoverable. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). And as

15  discussed at length above, there is no reasonable dispute as to Travelers' entitlement to the

16  communications between Ms. Drueding and Mr. Karwoski. Nor does this case present the kind of

17  circumstances that might otherwise make an award of expenses unjust. *See, e.g.*, *Sinclair v. Home*

18  *Depot, U.S.A., Inc.*, No. C19-1971-JCC, 2020 WL 5653322, at *2 (W.D. Wash. Sept. 23, 2020)

19  (award of expenses was unjust because the discovery dispute "arose at the height of the COVID-

20  19 pandemic"); *Ville v. Fam. Res. Home Care*, No. C17-0606-RSM, 2018 WL 994140, at *1 (W.D.

21  Wash. Feb. 21, 2018) (award of expenses was unjust where non-movant had difficulty

22  communicating with her out-of-state counsel, eventually went pro se, was unemployed, and did

23  not understand the posture of the case before the motion was filed). The Court acknowledges that

24  Ms. Drueding has proceeded pro se at various points during discovery—a fact that might, under

other circumstances, call for leniency. Not so here. The Court has determined that Ms. Drueding's discovery violations are the product of affirmative deceit, rather than a confused and inexperienced pro se litigant stumbling through discovery. In addition, Travelers' math establishes that Ms. Drueding's intermittent pro se status amounts to just 13 days total. Dkt. No. 42 at 6 & n.2.

The Court accordingly grants Travelers Rule 37 expenses.

### 4. Dismissal is an Available Sanction

Travelers next argues that Ms. Drueding's misconduct during discovery "justifies dispositive sanctions." Dkt. No. 29 at 11. Although it acknowledges the fact that dismissal is a particularly harsh penalty reserved for the most egregious cases, Travelers contends that it is a fitting sanction here because Ms. Drueding's conduct was willful. *See id.* ("Instead of producing th[e] documents, Plaintiff knowingly made false statements under oath in order to conceal their existence. Plaintiff's conduct falls squarely within the definition of 'willful.'").

As a threshold matter, the Court rejects Ms. Drueding's contention that dismissal is available only when a party disobeys a court order. *See* Dkt. No. 40 at 3. Ms. Drueding is correct that Rule 37(b)(2)(A) identifies seven sanctions—including dismissal of the action in whole or in part—that the Court may impose when a party "fails to obey an order to provide or permit discovery[.]" *See* Fed. R. Civ. P. 37(b)(2)(A)(v). And it is likewise true that she has not violated a discovery order. However, Ms. Drueding overlooks two other applicable Rule 37 provisions that expressly incorporate six of subsection (b)(2)(A)'s seven sanctions, including dismissal.[9] Where, as here, a party "fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless

---

[9] Ms. Drueding also overlooks the Court's "inherent power" to levy sanctions—including a dismissal sanction—for abusive litigation practices. *See Leon*, 464 F.3d at 958; *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).

the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The rule further provides that, "[i]n addition to or instead of" exclusion, the Court "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)." Fed. R. Civ. P. 37(c)(1)(C). Additionally, Rule 37(d)(1)(A)(ii) permits the Court to order sanctions if "a party, after being properly served with interrogatories under Rule 33 . . . , fails to serve its answers, objections, or written response." And these sanctions "may include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)." Fed. R. Civ. P. 37(d)(3).

Rule 37(c)(1)'s predicate requirements are met here. As the party facing sanctions, Ms. Drueding bears the burden of showing that her failure to timely produce supplemental information under Rule 26(e) is substantially justified or harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."); *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008) (the burden is on the party facing sanction to demonstrate that its noncompliance is substantially justified or harmless). She has done neither. Again, Ms. Drueding's nonproduction was not substantially justified because there is no reasonable dispute as to Travelers' entitlement to the communications between Ms. Drueding and Mr. Karwoski. *See Pierce*, 487 U.S. at 565. Nor was Ms. Drueding's withholding of those communications harmless. Travelers has now expended a great deal of time, effort, and money to obtain the emails and text messages that Ms. Drueding failed to voluntarily produce.

Because Travelers requests dismissal as a sanction, the Court must also consider whether Ms. Drueding's discovery noncompliance involved "willfulness, fault, or bad faith" when conducting a harmlessness inquiry under Rule 37(c)(1). *R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath v. Baker*, 24

F.3d 1162, 1167 (9th Cir. 1994). Ms. Drueding has not shown that her discovery noncompliance is attributable to anything beyond her control.

Rule 37(d)(3)'s requirements are likewise satisfied. Although Ms. Drueding served her interrogatory responses, those responses were inaccurate and incomplete. That is sufficient to trigger Rule 37(d)(3) sanctions. *See Putz*, 2012 WL 13019220, at \*5–6 (finding sanctions appropriate under Rule 37(d)(3) where party "failed to provide accurate information" in his interrogatory responses). Dismissal is therefore available under Rule 37(c)(1)(C) and (d)(3).

### 5. Dismissal is Too Harsh a Penalty

"By the very nature of its language, sanctions imposed under Rule 37 must be left to the sound discretion of the trial judge." *O'Connell v. Fernandez-Pol*, 542 F. App'x 546, 547–48 (9th Cir. 2013). But the general discretion a district court wields in imposing sanctions is "narrowed" when the "drastic" penalty of dismissal is on the table. *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981); *see Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam) (dismissal is "so harsh a penalty" that it is reserved only for "extreme circumstances."). In such situations, the offending party's noncompliance "must be due to willfulness, fault or bad faith." *Sigliano*, 642 F.2d at 310. As noted, Travelers argues that Ms. Drueding's conduct was willful (as evidenced by her repeated misrepresentations and deliberate evasiveness) and therefore warrants dismissal. Dkt. No. 29 at 11. The Court agrees that Ms. Drueding's discovery violations were willful. But although a willfulness finding is necessary to justify dismissal, it does not automatically provide sufficient grounds for dismissal in every case.

Instead, a district court must weigh five factors to determine whether dismissal is appropriate: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Leon*,

464 F.3d at 958. The first two factors "nearly always" tip in favor of dismissal, while the fourth "generally cuts against" it. *Spesock v. U.S. Bank, NA*, No. C18-0092-JLR, 2018 WL 5825439, at *3 (W.D. Wash. Nov. 7, 2018). The decisive factors for the Court's consideration, then, are risk of prejudice and availability of lesser sanctions. *Id.* Although the Ninth Circuit has expressly approved dismissal when "at least four factors support dismissal" or "three factors 'strongly' support dismissal," *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1263 (9th Cir. 1992)), there is no mathematical formula because the factors are "a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything," *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). After considering these factors, the Court concludes that dismissal is inappropriate—at least for now.

    a.    *The Public's Interest in Expeditious Resolution of Litigation*

The Ninth Circuit has said that "the public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). But this factor is not an automatic weight on the scale of dismissal; rather, the Court must still find unreasonable delay. *See Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986) (dismissal "must be supported by a showing of unreasonable delay," which "creates a presumption of injury to the defense"); *see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("[D]elay in reaching the merits . . . is costly in money, memory, manageability, and confidence in the process."). Ms. Drueding's delay here is unreasonable because she willfully shirked her discovery obligations by misrepresenting the extent of her relationship with Mr. Karwoski and withholding communications responsive to Travelers' production request. Not only were her initial responses to interrogatories and production requests incomplete and untruthful, but she thereafter compounded that violation by again failing to

1   produce the communications Travelers requested—all despite Travelers' repeated threats to move

2   for an order compelling production.

3       Travelers has been patient with Ms. Drueding throughout the discovery process. Indeed, it

4   accommodated two changes in counsel and sent repeated reminders about its pending request for

5   supplemental production. There is simply no excuse for Ms. Drueding's delay. The Court further

6   notes that the November 28, 2022 dispositive motions deadline is imminent and the discovery

7   deadline has now passed. Ms. Drueding's intransigence will now force the Court to move the

8   discovery deadline along with the trial date and the deadlines for pretrial submissions. This is

9   therefore not a case in which the offending party's violations have simply frustrated the moving

10  party or "delayed the progress of discovery in th[e] litigation overall." *Daniels v. Nat'l R.R.*

11  *Passenger Corp.*, No. C20-0295-JLR, 2021 WL 1117273, at *3 (W.D. Wash. Mar. 24, 2021); *see*

12  *also Howell v. Holland Am. Line Inc.*, No. C13-0730-JLR, 2014 WL 3752112, at *3 (W.D. Wash.

13  July 30, 2014) (first and second factors did not weigh in favor of dismissal because trial was eight

14  months away, the dispositive motions deadline was five months away, and discovery did not close

15  for another four months). The first factor thus weighs in favor of dismissal.

16          b.      *The Court's Need to Manage Its Docket*

17      The second factor favors dismissal for the same reasons. *See In re Phenylpropanolamine*,

18  460 F.3d at 1227 ("This factor is usually reviewed in conjunction with the public's interest in

19  expeditious resolution and, as with the first factor, we give deference to the district court 'since it

20  knows when its docket may become unmanageable.'" (quoting *In re Eisen*, 31 F.3d 1447, 1452

21  (9th Cir. 1994))). As explained above, Ms. Drueding has demonstrated a complete disregard for

22  her discovery obligations. The Court must now extend the discovery deadline to accommodate a

23  forensic examination of Ms. Drueding's devices. And along with it, the Court is forced to extend

24  the dispositive motions deadline, the pretrial deadlines, and the trial itself. Thus, Ms. Drueding's

misconduct has impacted the trial date and disrupted the Court's calendar.

          c.     *The Risk of Prejudice to Travelers*

The third factor likewise weighs in favor of dismissal. To prove prejudice, a defendant must generally show that the plaintiff's actions "impaired [its] ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Pagtalunan*, 291 F.3d at 642. But the law presumes prejudice where, as here, the Court finds unreasonable delay. *In re Phenylpropanolamine*, 460 F.3d at 1227. Ms. Drueding must therefore "proffer an excuse for delay that, if 'anything but frivolous,' shifts the burden of production to [Travelers] to show at least some actual prejudice[.]" *Id.* at 1228 (quoting *Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1281 (9th Cir. 1980)). Here, Ms. Drueding has not rebutted the presumption of prejudice because she failed to proffer a non-frivolous explanation for her unreasonable delay. She appears to suggest that the Court should consider her lack of counsel "during much of discovery," as well as the fact that her prior counsel "withdrew for reasons unrelated to Ms. Drueding." Dkt. No. 40 at 4. But Ms. Drueding was unrepresented for a total of 13 days, a relatively short period that by no measure amounts to "much of discovery." Dkt. No. 42 at 6 & n.2. And although the Court agrees that the withdrawal of Ms. Drueding's first counsel was beyond her control, nothing in the record suggests that her second attorney withdrew for reasons unrelated to her. *See* Dkt. No. 20 at 2 (alleging that counsel could no longer represent Ms. Drueding and comply with Washington Rules of Professional Conduct 1.4, 2.1, and 8.4, and citing Ms. Drueding's "failure to cooperate with counsel and a breakdown of productive communications").

Even if the Court did not presume prejudice from Ms. Drueding's unreasonable delay, Travelers has shown actual prejudice. That is, Ms. Drueding's discovery antics "impaired [Travelers'] ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Pagtalunan*, 291 F.3d at 642. Ms. Drueding predictably disagrees. She contends that any

1   prejudice "appears remote and speculative at best" because Travelers has submitted "voluminous

2   documentation" in support of its motion to compel. Dkt. No. 40 at 4–5. She also suggests that

3   Travelers' ability to proceed to trial has not been impaired because it has not moved for a trial

4   continuance or otherwise shown that one is necessary. *Id.* The Court is perplexed by this argument.

5   The "voluminous" phone records Travelers subpoenaed, obtained, and submitted in support of its

6   motion prove that Ms. Drueding concealed communications between her and Mr. Karwoski—

7   including daily phone calls and at least 475 text messages, the latter of which still have not been

8   produced. As Travelers notes, the time and money spent locating and reviewing hundreds of pages

9   of material just to prove that these communications exist is the prejudice. Dkt. No. 42 at 5; *see In*

10  *re Phenylpropanolamine*, 460 F.3d at 1228 ("Prejudice normally consists of loss of evidence and

11  memory; it may also consist of costs or burdens of litigation, although it may not consist of the

12  mere pendency of the lawsuit itself." (internal citation omitted)). The Court also rejects Ms.

13  Drueding's suggestion that her delay in producing the communications did not hinder Travelers'

14  ability to proceed to trial. At the very least, Travelers spent six months attempting to discover

15  information Ms. Drueding should have voluntarily disclosed from the beginning—time and effort

16  that it could have directed towards resolving this case on the merits or otherwise preparing for

17  trial. And that Travelers has not yet moved for a continuance or shown that one is necessary does

18  not mean it never will. Indeed, the full impact of Ms. Drueding's delay—including the resulting

19  prejudice—is yet to play out.

20      d.      *The Public Policy Favoring Disposition on the Merits*

21          The fourth factor generally "counsels strongly against dismissal." *Hernandez*, 138 F.3d at

22  399. However, district courts must "weigh this factor against the plaintiff's delay and the prejudice

23  suffered by the defendant." *Eisen*, 31 F.3d at 1454. It is Ms. Drueding's responsibility "to move

24  towards . . . disposition at a reasonable pace, and to refrain from dilatory and evasive tactics."

*Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991). The Ninth Circuit has accordingly "recognized that this factor 'lends little support' to a party . . . whose conduct impedes progress in that direction." *In re Phenylpropanolamine*, 460 F.3d at 1228 (quoting *In re The Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996)). That is the case here. As discussed at length above, Ms. Drueding has unreasonably delayed adjudication of this case. Her evasive and dishonest conduct remains the sole impediment to a full and fair disposition of this case on the merits. This factor is accordingly neutral at best.

e.     *The Availability of Less Drastic Sanctions*

The fifth and final factor weighs strongly against dismissal. "The district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 912 (9th Cir. 1986); *see also Raiford v. Pounds*, 640 F.2d 944, 945 (9th Cir. 1981) (per curiam) (a district court must consider less drastic alternatives "[e]specially when a case is still young"). Lesser sanctions include a warning, a formal reprimand, placing the case at the bottom of the calendar, a fine, the imposition of costs or attorney fees, dismissal of the suit unless new counsel is secured, or preclusion of claims or defenses. *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 n.1 (9th Cir. 1987). The Ninth Circuit uses three factors to assess the adequacy of a district court's exploration of less severe sanctions: "whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." *Valley Eng'rs Inc.*, 158 F.3d at 1057; *accord Malone*, 833 F.2d at 132. However, the Court "need not exhaust every sanction short of dismissal before finally dismissing the case[.]" *Henderson*, 779 F.2d at 1424.

Travelers claims that this factor "does not save [Ms. Drueding] from dismissal" because "the brazenness of [her] conduct undermines any belief in the ability of alternative sanctions to

induce compliance." Dkt. No. 29 at 12; *see Anheuser-Busch*, 69 F.3d at 352 ("It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct."). That may be so. And the Court acknowledges that three of the five factors weigh in favor of dismissal. But again, dismissal with prejudice is the ultimate penalty and should be cabined to truly extreme circumstances—at least where, as here, lesser sanctions may be adequate. The Court thus elects to not impose a terminating sanction but warns Ms. Drueding that additional discovery violations, violations of Court orders, or other dilatory tactics will not be tolerated. Ms. Drueding will not receive another warning. *See Malone*, 833 F.2d at 132 ("[W]arning a plaintiff that failure to obey a court order will result in dismissal can suffice to meet the 'consideration of alternatives' requirement.").

Travelers' request for a dismissal sanction is denied.[10]

### 6.    Less Drastic Sanctions

Ms. Drueding must pay the reasonable expenses Travelers incurred as a result of her failure to provide a complete and accurate response to Interrogatory No. 8. Under Rule 37(d)(3), "[i]nstead of or in addition to" the sanctions listed in subsection (b)(2)(A)(i)–(vi), "the court *must* require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." (emphasis added).[11]

---

[10] Ms. Drueding also appears to suggest that dismissal is inappropriate because Travelers incorrectly noted its motion to compel (which sought a terminating sanction) as a third-Friday motion instead of a fourth-Friday motion. *See* Dkt. No. 40 at 6 ("Due to the seriousness of the requested relief, the Court requires that a motion to dismiss be scheduled for hearing as a 'Fourth Friday' motion." (erroneously citing LCR 7(e)(3) instead of LCR 7(d)(3))). As noted in *Taylor v. Merchants Credit Corporation*, LCR 7(d)(3) "includes an exhaustive list of motions that are 'fourth Friday' motions," and "[t]hat list does not include . . . motions for sanctions." No. C13-395-RSM, Dkt. No. 32 at 2 (W.D. Wash. June 24, 2013). Travelers correctly noted its motion for the third Friday after filing. LCR 7(d)(3).

[11] Even absent Rule 37(d)(3)'s mandatory language, the Court would award expenses pursuant to subsection (c)(1)(C), which permits imposition of "other appropriate sanctions." *See Putz*, 2012 WL 13019220, at *6 (finding sanctions appropriate under both Rule 37(c)(1) and (d)(3)).

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AND REQUEST FOR SANCTIONS, AWARDING EXPENSES, AND EXTENDING DEADLINES - 25

1    Reasonable expenses here include the costs of subpoenaing cell phone records as well as the

2    attorney fees amassed reviewing those records and communicating with Ms. Drueding and her

3    counsel to obtain the Karwoski communications. *See Thomas v. Everett Ass'n of Credit Men, Inc.*,

4    No. C17-599-RSM, 2018 WL 1899356, at *2 (W.D. Wash. Apr. 20, 2018) (time spent prior to

5    filing motion for sanctions could be recovered under Rule 37(d)(3) "if it was time spent due to

6    Plaintiff's failure to comply with discovery obligations"). And as repeatedly discussed above, Ms.

7    Drueding has not shown that her failure to provide a complete and accurate response to

8    Interrogatory No. 8 and Request for Production No. 3 was substantially justified or that other

9    circumstances make an award of these expenses unjust.

10   **B.    Motion to Extend Discovery Deadline**

11          Travelers seeks a 30-day extension of the discovery deadline so that it may (1) "secure

12   complete and truthful responses" to its Interrogatories and Requests for Production; (2) depose

13   Ms. Drueding following receipt of the communications at issue; and (3) issue a subpoena duces

14   tecum to Mr. Karwoski "for any responsive documents in his possession." Dkt. No. 32 at 3. Ms.

15   Drueding resists this request on two fronts. She first argues that Travelers' motion violates Section

16   I.B(4) of the Court's Standing Order for All Civil Cases, which—like Federal Rule of Civil

17   Procedure 37(a)(1) and Local Civil Rule 37(a)(1)—requires parties to "make a good faith effort to

18   meet and confer with the opposing party" before filing a motion to compel. Dkt. No. 33 at 4–5.

19   And second, Ms. Drueding contends that Travelers was not diligent in seeking an extension of the

20   discovery deadline and therefore cannot demonstrate the requisite good cause for a schedule

21   modification. *Id.* at 5–6. She alternatively asks the Court to "allow both sides the same extension

22   so that Plaintiff can conduct follow up discovery and/or motion practice after receipt of defendant's

23   responses." *Id.* at 7.

24

1.     There is No Meet-and-Confer Requirement for a Motion to Extend the Discovery Deadline

The Court rejects Ms. Drueding's first argument. Section I.B(4) of its Standing Order for All Civil Cases imposes a meet-and-confer requirement prior to the filing of *a motion to compel*— not, as Ms. Drueding suggests, prior to the filing *any* discovery motion. Dkt. No. 33 at 4. The motion at issue here is for an extension of the discovery deadline. Thus, even assuming it qualifies as a "discovery motion," Travelers was not required to meet and confer with Ms. Drueding prior to filing.

2.     Travelers Has Shown Good Cause to Extend the Deadline

A district court may modify its schedule only if the moving party shows good cause. Fed. R. Civ. P. 16(b)(4); *see also* Fed. R. Civ. P. 6(b)(1)(A) (the court may extend a deadline for good cause when the request is made prior to the deadline). This standard "primarily considers the diligence of the party seeking the amendment" to the schedule. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). And, under this standard, a schedule modification is appropriate if the current deadline cannot be met despite the diligence of the moving party. *Id.* Carelessness is incompatible with a finding of diligence. *Id.* The Court's inquiry thus focuses on the moving party's reasons for seeking a modification and, "[i]f that party was not diligent, the inquiry should end." *Id.*; *accord Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

Travelers was diligent throughout discovery and, ultimately, in seeking an extension of the discovery deadline. It served its written discovery requests "as early as reasonably practicable" and, when Ms. Drueding failed to timely serve her responses, repeatedly reminded her of her discovery obligations and agreed to extensions through July 2022. Dkt. No. 35 at 2–3. Once Travelers received Ms. Drueding's responses, it immediately identified the deficiencies and

demanded supplemental responses in two letters. *Id.* at 3; *see* Dkt. Nos. 30-8, 30-9 (July 29 and August 9, 2022 letters). Travelers even attempted to obtain the communications on its own by subpoenaing Ms. Drueding's cell phone records. Dkt. No. 30-9 at 6–36. And when Travelers' counsel received the records, he arranged a telephonic discovery conference with Ms. Drueding's counsel the next day to make clear Travelers' expectations for the forthcoming supplemental production. Dkt. No. 35 at 3; Dkt. No. 30-18 at 2. That supplemental production turned out to be deficient. Travelers was then left with no choice but to file its motion to compel and request an extension of the discovery deadline.

Although failure to complete discovery during the time allotted generally does not provide good cause for an extension, *see* LCR 16(b)(6), the failure to do so here is attributable solely to Ms. Drueding's evasive responses and misrepresentations in the face of repeated and unequivocal requests. This is not a case in which Travelers waited until the last minute to request information that was at its fingertips for months. Nor did Travelers sit idly on its hands after receiving Ms. Drueding's deficient initial responses. Rather, it actively sought the Karwoski communications beginning in April 2022 and thereafter reiterated exactly what it wanted at each turn. But Ms. Drueding continues to withhold that information. Travelers has accordingly demonstrated both diligence and an inability to meet the current discovery deadline despite that diligence. *See Johnson*, 975 F.2d at 609.

Ms. Drueding nonetheless suggests that Travelers was not diligent because it obtained the subpoenaed phone records on September 27th and her supplemental production on October 4th but did not move for an extension of the discovery deadline until October 19th. Dkt. No. 33 at 6.[12] She relies on an October 7th email from Travelers' counsel, in which he indicated that he "had

---

[12] Travelers filed its motion for an extension of the deadline on October 20th—not the 19th. *See* Dkt. No. 32.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AND REQUEST FOR SANCTIONS, AWARDING EXPENSES, AND EXTENDING DEADLINES - 28

been inundated in other matters th[at] week and ha[d] not had a chance to complete [his] review" of the supplemental production. Dkt. No. 34 at 17; *see* Dkt. No. 33 at 6 ("However, in his own words, defense counsel was too busy with 'other [apparently more important] matters' to review the documents consistent with the case schedule[.]" (alteration original)). This does not disprove Travelers' diligence. As recounted above, Travelers' counsel completed his review of Ms. Drueding's supplemental disclosure on October 12th and promptly notified opposing counsel of the continued deficiency, canceled Ms. Drueding's deposition, and indicated Travelers' intent to move ahead with its motion to compel. Dkt. No. 34 at 19. A several-day delay in reviewing documents before rushing to the courthouse to file a discovery motion is reasonable under these circumstances. It certainly does not negate several months of diligent efforts to obtain the Karwoski communications. Ms. Drueding cannot delay her (deficient) supplemental production until the eve of discovery's close and then blame Travelers for not moving for an extension of the discovery deadline sooner.

The Court finds good cause to extend the discovery deadline for a forensic examination of Ms. Drueding's electronic devices and so that Travelers may depose Ms. Drueding and issue a subpoena duces tecum to Mr. Karwoski.

3. The Discovery Extension Does Not Apply to Ms. Drueding

Ms. Drueding is not entitled to an extension of the discovery deadline for two reasons. First, she requests such relief in her response brief, which is procedurally improper. "[R]equests for affirmative relief must be made in a motion, not in the response[.]" *Sergeant v. Bank of Am., N.A.*, No. C17-5232-BHS, 2018 WL 1427345, at *1 n.2 (W.D. Wash. Mar. 22, 2018) (citing LCR 7(b)(1), 7(k)). Second, she makes no attempt to articulate good cause. Nor could she make such a

showing. As Travelers notes, Ms. Drueding may not benefit from her own dilatory tactics and discovery violations. Dkt. No. 32 at 3.[13]

### III.   CONCLUSION

For the reasons discussed above, the Court GRANTS IN PART AND DENIES IN PART Travelers' Motion to Compel and Request for Sanctions, Dkt. No. 29, and GRANTS its Motion for Limited Extension of Discovery Cutoff, Dkt. No. 32. The discovery deadline is extended to December 21, 2022. The Court also adjusts the remaining case schedule as follows:

| Trial (5 days) | May 22, 2023 |
|---|---|
| Pretrial Conference | May 12, 2023 at 10:00 a.m. |
| Trial Briefs, Proposed Voir Dire Questions, and Deposition Designations | May 8, 2023 |
| Pretrial Order and Proposed Jury Instructions | May 1, 2023 |
| Motions in Limine | April 17, 2023 |
| Rule 39.1 Mediation Completed | March 28, 2023 |
| Attorney Settlement Conference Completed | March 28, 2023 |
| Dispositive Motions Deadline | January 20, 2023 |
| Discovery Deadline (Travelers Only) | December 21, 2022 |

The parties must, within ten days of the date of this Order, identify a mutually acceptable plan for Ms. Drueding to submit all relevant electronic devices within her possession to a qualified, independent forensic examiner.

---

[13] Ms. Drueding filed a surreply pursuant to Local Civil Rule 7(g) asking the Court to strike the Declaration of Jared F. Kiess in Support of Travelers' Motion for Limited Extension of Discovery Cutoff. Dkt. No. 38 at 2; *see* Dkt. No. 36 (declaration at issue). Ms. Drueding contends that "[n]one of the statements included in Mr. Kiess's Declaration respond to or dispute Ms. Drueding's evidence in opposition to defendant's motion; Mr. Kiess instead submits new evidence to buttress his original pleading." Dkt. No. 38 at 2. The Court denies this request but notes that it would reach the same result absent Mr. Kiess's declaration.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL AND REQUEST FOR SANCTIONS, AWARDING EXPENSES, AND EXTENDING DEADLINES - 30

1    Travelers shall file, within 15 days, a motion for expenses that includes an accounting of

2    all Rule 37(a)(5)(A) attorney fees and expenses that its counsel reasonably incurred in preparing

3    its motion to compel. Dkt. No. 29. It shall further account for all Rule 37(d)(3) attorney fees and

4    expenses that its counsel reasonably incurred as a result of Ms. Drueding's failure to provide a

5    complete and accurate response to Interrogatory No. 8 and Request for Production No. 3—separate

6    and apart from those associated with drafting and filing the motion to compel. Travelers must

7    clearly distinguish between the two sets of expenses and attorney fees. And it shall note its motion

8    in accordance with the Local Civil Rules.

9    Dated this 21st day of November, 2022.

10

11    Lauren King
      United States District Judge